IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR COLLIER COUNTY, FLORIDA
CASE NO.:

**CLAUDINE SISCA,**
    Plaintiff,

v.

**CITY FURNITURE, INC., and**
**DAVID ROMAN, an individual,**
    Defendant.

---

**COMPLAINT**
(Demand for Jury Trial)

Claudine Sisca, by counsel, sues the defendants City Furniture, Inc. and David Roman for violation of Title VII of the Civil Rights Act of 1964, as amended, and for battery under the common law of Florida. For her Complaint, Plaintiff alleges:

PARTIES

1. Plaintiff, Claudine Sisca ("Sisca"), is a citizen of the State of Florida and a resident of Collier County, Florida, and over the age of eighteen (18) years. At all times pertinent, Plaintiff was an "employee" of the Defendant as defined by Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

2. Defendant, City Furniture, Inc. ("City Furniture"), is a corporation and is and was authorized, operating, and licensed to do business in the State of Florida. At all times material hereto, City Furniture is an "employer" as defined by Title VII.

EXHIBIT 1

3. Defendant, David Roman ("Roman") is an individual working and residing in Collier County, Florida. At all times material hereto, Roman was a General Manager of City Furniture and Sisca's direct supervisor.

## JURISDICTION AND VENUE

4. This is an action for damages in an amount in excess of $50,000.00 arising out of for unlawful discrimination of Plaintiff on the basis of her sex in violation Title VII and for battery under the common law of Florida.

5. The cause of action accrued in Collier County, Florida where the corporate Defendant maintains and operates retail stores Hence, venue is proper in this district.

## CONDITIONS PRECEDENT

6. Plaintiff filed her individual charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or around August 21, 2024.

7. The EEOC issued a right to sue on November 7, 2024 and her suit is brought within ninety (90) days of her receipt of the notice and thus, this case is filed within the timeframe set forth in the right to sue.

## GENERAL ALLEGATIONS

8. Sisca was initially employed by City Furniture on December 12, 2021 in a sales position at one of the Naples stores.

9. In the beginning of January, 2024, Roman was transferred to the Naples store with the title of General Manager.

10. During this time, Sisca was dealing with a personal family emergency as she was told that her daughter had run away. She asked her manager, Denise Staller ("Staller"), if she could leave her shift early and Staller gave her permission to do so.

11. Then, in or around February, 2024, Sisca's daughter fell ill and she asked her other manager, Tracy Bosco ("Bosco"), if she could leave early to pick up her daughter and she also said yes.

12. In February, 2024, Sisca took earned vacation days and underwent breast augmentation surgery. Upon her return to work, Roman hugged her and said, "very nice." Roman had never hugged her prior to her breast augmentation surgery, but hugged her every day before their meetings after her surgery and she never reciprocated his hugs.

13. The interaction made Sisca feel very uncomfortable. The following month, in March, 2024, Roman asked Sisca if she would be interested in taking a 30-day leave to get her affairs situated with her daughter.

14. As suggested by Roman, Sisca spoke to Human Resources representative, Viviana Nieto, and received a 30-day leave, returning in April, 2024.

15. Upon her return, on every single morning before the regularly scheduled morning meeting, Roman would fist pump each employee, except for Sisca.

16. Rather than fist bumping Sisca, in the full view of the other employees Roman would hug her, making her feel very uneasy and uncomfortable.

17. Roman's conduct unreasonably interfered with Sisca's ability to work and perform her duties in sales.

18. On June 8, 2024, Roman approached Sisca and told her that she was being sent home because she missed work the prior day on June 7th.

19. Sisca was not scheduled to work on June 7th and explained that to Roman. Roman then stated that he had "made a mistake" and that "everything is OK".

20. The following day, on June 9th, Roman alleged that Sisca was late returning from lunch the previous day and that they had to have a meeting on June 10th.

21. The meeting was conducted via Zoom and was attended by Jill Scarborough from Human Resources, David Roman, Giovanni Castellana, Senior Manager, and Florina Evans, Regional Manager.

22. During this meeting, Sisca was informed that if she was late again or if she does one more thing wrong, her employment would be terminated.

23. Because of Roman's presence, Plaintiff was uncomfortable talking about Roman's conduct to the participants at the meeting.

24. However, Sisca asked for Human Resources number. It was her intention to make the report to Human Resources outside the presence of Roman.

25. Roman interjected and said that Human Resources could only call her and that she was not allowed to contact them.

26. Even though Scarborough knew that Sisca was being told that she could not talk to Human Resources and that such a restriction violated City Furniture's policies, Scarborough did not correct Roman's instructions to Sisca, nor did she attempt to contact Sisca about her unstated concerns.

27. As a result, left unchecked by Human Resources, Roman continued to hug Sisca every day.

28. Roman's conduct and Sisca's discomfort was publicly apparent to co-workers who would ask, "Why is he always hugging you?"

29. Despite this public conduct, City Furniture took no actions to investigate or prevent further harassment.

30. Around the first Sunday in July, Sisca was told by Castellana that she was being sent home. Castellana told her that he was unaware of the reasons for this but that Human Resources would call her the next day to discuss.

31. Because Sisca never received a call from Human Resources, she contacted Castellana and asked him what was going on.

32. Instead of Castellana or Human Resources replying to her, she then received a text message from Roman requesting that she give him a call.

33. During that call, Roman told her there had been a "mistake", that she was actually not suspended, and directed her to return to her regularly scheduled workday which was that upcoming Thursday, July 11.

34. When Sisca returned to work, Roman told her that she would be paid for the days she missed. However, this did not make up for the appointments that she missed and the sales and commissions that she lost for this "mistake".

35. The following Monday, July 15, Castellana told Sisca she's being sent home once more. She replied, "we just did this last week and you guys said it was a mistake."

36. Castellana once again told Sisca that he did not know why she was being sent home.

37. At this time, Sisca explained to Castellana the inappropriate touching she had been receiving from Roman since her breast augmentation.

38. Castellana told Sisca that he would inform Scarborough and that she would call her back.

39. Rather than taking any action to investigate, around ten that morning Scarborough and Castellana and informed her that her employment has been terminated.

40. When Sisca asked why her employment was being terminated, she was told that she "broke policy". When Sisca asked which policy she broke, they said that they could not say. Scarborough said she would stay on the line following the call and speak with her privately. Sisca informed Scarborough of what had been going on with Roman since her breast augmentation surgery and explained that she felt very uncomfortable. Scarborough reiterated that her employment remained terminated and that she no longer worked for City Furniture.

41. As a direct and proximate result of her termination, Sisca was caused to suffer economic hardship and severe emotional distress.

42. Further, her terms and conditions of employment were adversely impacted. This was proximately caused by her having to endure repeated and humiliating sexual harassment.

43. During employment, she not only suffered severe emotional distress, it affected her ability to perform the essential functions of her job and diminished her compensation and promotional opportunities.

**COUNT I**
Sex Discrimination in violation of Title VII of the Civil Rights Act of 1964 (Hostile Environment)

44. Sisca re-alleges ¶¶ 1-43.

45. City Furniture knowingly and willfully discriminated against Sisca on the basis of her sex in violation of Title VII by permitting a sexually hostile environment to exist which was both severe and pervasive.

46. As a direct and proximate result of City Furniture's unlawful and discriminatory acts, Sisca was caused to suffer loss of promotional opportunity, loss of earning capacity, loss of enjoyment of life, injury to reputation, and severe emotional distress.

47. Sisca has hired counsel and is obligated to compensate them for their services.

WHEREFORE, Plaintiff prays that this Court:

(a) Declare Defendant's conduct to be violations of Plaintiff's rights under Title VII;

(b) Award restitution damages to loss of earnings for all lost wages including merit increases, loss of promotional opportunity, benefits, and other remuneration;

(c) Award compensatory damages to Plaintiff for her pain and suffering;

(d) Award Plaintiff punitive damages as punishment for Defendant's willful violations of Title VII, as amended, and as a deterrent to others;

(e) Award Plaintiff her costs and attorneys' fees;

(f) Award Plaintiff pre-judgment and post-judgment interest as permitted by applicable law; and

(g) Grant such other and further relief as may be deemed just and proper.

## COUNT II

Retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended

48. Sisca re-alleges ¶¶ 1-43.

49. City Furniture retaliated against Sisca by terminating her employment after she filed complaints with her management of sexual harassment in violation of Title VII.

50. As a direct and proximate result of City Furniture's unlawful and discriminatory acts, Sisca was caused to suffer loss of promotional opportunity, loss of earning capacity, loss of enjoyment of life, injury to reputation, and severe emotional distress.

WHEREFORE, Plaintiff seeks the following relief:

(a) Declare Defendant's conduct to be violations of Plaintiff's rights under Title VII;

(b) Award restitution damages to loss of earnings for all lost wages including merit increases, loss of promotional opportunity, benefits, and other remuneration;

(c) Award compensatory damages to Plaintiff for her pain and suffering;

(d) Award Plaintiff punitive damages as punishment for Defendant's willful violations of Title VII , as amended, and as a deterrent to others;

(e) Award Plaintiff her costs and attorneys' fees;

(f) Award Plaintiff pre-judgment and post-judgment interest as permitted by applicable law; and

(g) Grant such other and further relief as may be deemed just and proper.

## COUNT III
Battery under the Common Law of Florida

51. Sisca re-alleges ¶¶1-43.

52. This is a claim for battery arising under the common law of Florida.

53. The repeated and unwelcome touchings by Roman constituted batteries under Florida law.

54. The threatening and unremitting conduct of Roman placed Sisca in constant fear of additional touching by Roman.

55. City Furniture tolerated the public conduct of one its managers and took no steps to protect Sisca.

56. No later than July 8, 2024, City Furniture had actual knowledge that Sisca was desirous of meeting with Human Resources and that Roman was interfering in her right to meet with them.

57. Sisca actually reported this conduct to Castellana who promised to bring the information to Human Resources.

58. Castellana then participated in Sisca's termination by phone.

59. It is unknown whether Castellana in fact communicated Sisca's complaint of sexual harassment to Scarborough, but he was certainly aware of them when very shortly thereafter he was on the phone call when Sisca was informed that she had been terminated.

60. Scarborough, for her part, remained on the call after Castellana had left, and Sisca explained to her what she had already told Castellana about Roman's conduct. Rather than taking any immediate action, Scarborough simply told Sisca that she had been terminated and was no longer an employee.

61. Unlike many sexually hostile environmental cases, Roman's conduct became open and obvious daily in meetings.

62. Not only that, his conduct was observed and commented upon by other participants in those meetings.

63. City Furniture thus ratified Roman's intentional torts by failing to take immediate remedial action when it heard Roman tell Sisca she had no right to call Human Resources. As such, it thus permitted Roman to continue sexually harassing Sisca.

64. City Furniture, despite its knowledge of Roman's conduct and Sisca's objection to it, is jointly and severally liable with Roman for his intentional torts.

65. As a direct and proximate result of Roman's batteries and City Furniture's toleration and ratification of them, Sisca was caused to suffer loss of promotional opportunity, loss of earning capacity, loss of enjoyment of life, injury to reputation, and severe emotional distress.

WHEREFORE, Plaintiff seeks the following relief:

(a) Award compensatory damages to Plaintiff for pain and suffering,

(b) Award Plaintiff her costs of action; and

(c) Grant such other and further relief as may be deemed just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury of all issues so triable as a matter off of right

**DATED JANUARY 22, 2025**                               **FOR PLAINTIFF:**

BY: */s/ G. Ware Cornell, Jr.*
G. Ware Cornell, Jr.
Fla. Bar No.: 203920
ware@warecornell.com
**CORNELL & ASSOCIATES, P.A.**
2645 Executive Park Drive, Weston, Fla. 33331
(954) 618-1041